UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LORENZO BARNES, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 21-2523 (RBK) (SAK) |
| | : | |
| v. | : | |
| | : | |
| DAVID E. ORTIZ, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

I.     INTRODUCTION

Plaintiff, Lorenzo Barnes ("Plaintiff" or "Barnes"), is a federal prisoner proceeding *pro se* with a complaint alleging several Defendants violated his constitutional and state law rights. (*See* ECF 1). At the present time, this Court must screen the claims of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the claims seek monetary relief from a defendant who is immune from suit. For the following reasons, Plaintiff fails to state a federal claim upon which relief may be granted and this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

II.     FACTUAL BACKGROUND

The allegations of the complaint are construed as true for purposes of this screening opinion. The circumstances giving rise to Plaintiff's complaint arose when Plaintiff was incarcerated at F.C.I. Fort Dix in Fort Dix, New Jersey. Plaintiff names the following individuals as Defendants:

1. David E. Ortiz – Warden F.C.I. Fort Dix
2. Dr. Ravi Sood – F.C.I. Fort Dix Site Medical Physician

     3. Dr. Ibe – F.C.I. Fort Dix Site Physician Assistant
     4. Mr. Wilks – Director of Treatment at F.C.I. Fort Dix
     5. Lt. Decker – Section Chief at F.C.I. Fort Dix
     6. Ms. Raja Gilyard – Unit Manager at F.C.I. Fort Dix

(ECF 1 at 2).

Plaintiff began his incarceration at F.C.I. Fort Dix in April, 2019.[1] (*See id.* at 3). Plaintiff previously had pins placed in his right thumb and had his left leg injured due to gunshot wounds. (*See id.*). Plaintiff had paperwork indicating he needed additional surgery when he arrived at F.C.I. Fort Dix. However, at that time, doctors told him they would not perform surgery. (*See id.*). For the next thirteen months, Plaintiff notified authorities of the excruciating pain he was experiencing due to his injuries. (*See id.*).

Plaintiff was placed on a top bunk upon his arrival at F.C.I. Fort Dix. (*See id.*). However, at some date prior to May 28, 2020, one of the pins in Plaintiff's thumb broke due to Plaintiff having to jump up and down from the top bunk which caused Plaintiff severe pain. (*See id.*). Plaintiff sought medical attention for weeks. He was finally provided antibiotics by medical personnel. (*See id.*). Additionally, Plaintiff was also given an antibiotic shot for his left hip. (*See id.* at 5).

Ultimately, Defendant Wilks requested Plaintiff's signature to move forward on surgery for Plaintiff. (*See id.* at 5). Plaintiff though states Wilks:

> notified the plaintiff that his signature was needed to verify the surgery had been completed days before the surgery was performed. Mr. Wilks stated that the plaintiff['s] signature was needed to prove the problem has been fixed and resolved. Under duress of extreme pain, and heavily medicated, the plaintiff signed the papers. Plaintiff was not fully coherent during this verbal discourse and signing of the papers.

---

[1] The precise timeline of certain events alleged in the complaint is not entirely clear. However, given Plaintiff is proceeding *pro se*, this Court had done its best to create a timeline based on Plaintiff's allegations.

(ECF 1 at 5). Wilks told Plaintiff at that signing that surgery would take place in three to four days. (*See id.*). Indeed, on May 28, 2020, or a few days after meeting with Wilks, Plaintiff had surgery which resulted removing the broken pin from his thumb. Nevertheless, this left Plaintiff's hand infected and swollen. (*See id.* at 5 and 6). While Plaintiff was told that he would have a follow-up evaluation after surgery, none occurred. (*See id.* at 6).

Plaintiff then states he made four sick calls a day from September 20, 2020 to November 10, 2020 to no avail. (*See id.* at 4). Ultimately, however, on November 9, 2020, Plaintiff received refills of pain medication.

Plaintiff states Dr. Sood requested Plaintiff receive orthopedic surgery and scheduled a follow-up evaluation for December 10, 2020. (*See id.* at 8). However, Dr. Sood's requests were not "posted." Plaintiff indicates that as of the date his signed his complaint, February 10, 2021, he was still awaiting transfer to F.C.I. Butner, North Carolina.[2] (*See id.*).

Plaintiff claims against the Defendants relate to his placement on a top bunk which ultimately led to further injury to his hand. Furthermore, Plaintiff complains about the medical care, or lack thereof, he received while incarcerated at F.C.I. Fort Dix. Plaintiff seeks injunctive and monetary relief. He claims the Defendants are liable to him under a theory of negligence and for violating his Eighth Amendment right to be free from cruel and unusual punishment. He sues the Defendants in both their official and individual capacities.

III.   LEGAL STANDARD

District courts must review complaints in civil actions in which a prisoner seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with

---

[2] At some point after Plaintiff filed this complaint, Plaintiff was transferred to F.C.I. Butner. (*See* ECF 9 at 2). Plaintiff subsequently filed a notice of a change of address to a facility in Virginia on April 4, 2022. (*See* ECF 10).

respect to prison conditions. *See* 42 U.S.C. § 1997e. District courts are directed to *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)); *see also Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, are liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### IV.     DISCUSSION

Plaintiff sues the Defendants in both their official and individual capacities. (*See* ECF 1 at 2). Plaintiff cites to 42 U.S.C. § 1983 in bringing his claims against Defendants. (*See* ECF 1 at 2). However, as Defendants are federal employees as opposed to state actors, his claims are more properly brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Parra v. Finley*, No. 21-0973, 2021 WL 5279890, at *2 (M.D. Pa. Nov. 12, 2021) ("While § 1983 protects against violations of constitutional rights at the hands of state officials, the Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971), recognized in limited situations, a monetary remedy designed to vindicate constitutional violations committed by federal officials in their individual capacities."). "In order to state a claim under *Bivens*, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law." *Doty v. United States*, Civ. No. 15-3016, 2016 WL 3398579, at *6 (D. N.J. June 15, 2016) (citations omitted).

*Bivens* permits a damages remedy "to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court has extended *Bivens* to only a few other limited constitutional violations. *See id.* For example, in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court held the Eighth Amendment gave a prisoner's estate a damages remedy against prison officials for failing to provide adequate medical treatment. *See Ziglar*, 137 S. Ct. at 1855; *see also Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022).

Plaintiff's *Bivens* claims against the Defendants fall within its purview since Plaintiff seeks relief against the Defendants for their purported deliberate indifference to his serious medical needs.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir.

6

2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

    A. Injunctive Relief

Plaintiff seeks at least in part injunctive relief. However, Plaintiff is no longer incarcerated at F.C.I. Fort Dix. This moots his claim for prospective injunctive relief against the Defendants who purportedly work at F.C.I. Fort Dix. *See Williams v. Ann Klein Forensic Ctr.*, No. 18-9606, 2020 WL 614657, at *6 (D.N.J. Feb. 10, 2020) (citations omitted). Thus, Plaintiff's claims against Defendants for injunctive relief are dismissed without prejudice.

    B. Official Capacity Against Individual Defendants

Plaintiff also sues Defendants for monetary damages in their official and individual capacities. "However, Bivens only authorizes suit against federal officials in their individual capacities[.]" *Warren v. United States*, 279 F. App'x 162, 163-64 (3d Cir. 2008) (per curiam) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 473 (1994)). Accordingly, Plaintiff's claims against Defendants in their official capacities for monetary damages are dismissed with prejudice for failure to state a claim upon which relief may be granted.

    C. Individual Capacity Against Individual Defendants

What therefore remains is Plaintiff's claims against Defendants in their individual capacities for monetary damages. "In order for liability to attach under [*Bivens*], a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, 532 F. App's 78, 81 (3d Cir. 2013) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual

knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

Plaintiff fails to state with the required facial plausibility any personal involvement whatsoever with respect to Defendants Ortiz, Ibe, Decker and Gilyard in a purported violation of Plaintiff's constitutional rights. Thus, Plaintiff fails to state a claim against these four Defendants.

Plaintiff though may be attempting to assert these four Defendants are liable based on supervisor liability. Nevertheless, to the extent Plaintiff may be suing these four Defendants under a supervisor theory of liability, he again fails to state a *Bivens* claim against them for the reasons that follow. There are two theories of supervisory liability potentially applicable, they are as follows: (1) "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.' " *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Arguenta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011) (declining to address whether *Iqbal* narrowed the scope of supervisory liability where plaintiff failed to allege a plausible claim for relief against supervisors based on their knowledge or acquiescence or other theory). With respect to the second theory of liability, a plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."

8

*See Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *see also Wharton v. Danberg*, 854 F.3d 234, 241 n.10 (3d Cir. 2017). Plaintiff's complaint fails to allege with the required facial plausibility that Defendants Ortiz, Ibe, Decker and Gilyard are liable under either supervisory theory of liability.

Plaintiff's complaint does allege specific actions as it relates to Defendants Sood and Wilks. As noted above, with respect to Sood, Plaintiff alleges that Sood wrote a consultation request for orthopedic surgery on November 9, 2020 as well as a follow-up evaluation for December 11, 2020. Plaintiff though states that Sood's requests were not posted until December 23, 2020. Based on the sparse allegations as it relates to Sood's involvement in this case, this Court fails to see how Plaintiff has sufficiently alleged with facial plausibility that Sood was deliberately indifferent to Plaintiff's serious medical needs. Indeed, if anything, Sood was attempting to be proactive in the treatment of Plaintiff and sought to get Plaintiff the surgery he was personally requesting. Plaintiff does not allege Sood was responsible for any delay in necessary treatment for a non-medical reason. As such, Plaintiff's *Bivens* claim against Sood in his individual capacity for monetary damages is dismissed without prejudice for failure to state a claim upon which relief may be granted.

Plaintiff also does allege specific facts related to Wilks. Most notably, Plaintiff notes Wilks had Plaintiff sign documents that surgery on his hand was completed prior to it being performed. Nevertheless, Plaintiff readily admits Wilks told him surgery would be performed in the coming days and Plaintiff concedes that it was (albeit perhaps not to Plaintiff's liking).

Plaintiff's main complaint with Wilks appears to be that Wilks forced Plaintiff to sign off on documents indicating that the surgery was completed before it occurred. Given Plaintiff's additional admission that surgery was performed a few days after Plaintiff's meeting with Wilks,

this Court fails to see how Wilks' actions as alleged amount to deliberate indifference. Indeed, Wilks purportedly told Plaintiff that surgery would take place in the coming days which is precisely what happened. That Plaintiff ultimately was dissatisfied with the results of said surgery does not relate back to Wilks actions. Without any additional factual allegations of Wilks' involvement, if any, prior to Plaintiff's hand surgery, Plaintiff's *Bivens* claim against Wilks in his individual capacity for monetary damages will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

  D.  State Law Claims

Finally, Plaintiff alludes to state law claims of negligence and medical malpractice against Defendants. This Court has dismissed all of Plaintiff's federal claims against the Defendants. When a court dismisses all claims over which it had original federal question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). As Plaintiff's federal claims have been dismissed at this early screening stage for failure to state a claim upon which relief may be granted, this Court will exercise its discretion to decline supplemental jurisdiction over any related state law claims.

  V.  **CONCLUSION**

For the foregoing reasons, Plaintiff fails to state any federal claims upon which relief may be granted and this Court declines to exercise supplemental jurisdiction over any state law claims Plaintiff is raising. Accordingly, Plaintiff's complaint is dismissed without prejudice. Plaintiff shall have thirty (30) days from the date this opinion and accompanying order are entered in which to submit a proposed amended complaint subject to this Court's screening that corrects the

deficiencies of Plaintiff's original complaint outlined in this opinion. An appropriate order will be entered.

DATED: August 30th, 2022

s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

11